```
               IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JOSE BURGOS,                      :    CIVIL ACTION
                                  :    NO. 08-1179
          Plaintiff,              :
                                  :
     v.                           :
                                  :
PHILADELPHIA PRISON HEALTH        :
SYSTEM et. al.,                   :
                                  :
          Defendants.             :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                  AUGUST 26, 2009

I.   BACKGROUND

Pro se Plaintiff Jose Burgos ("Plaintiff") filed this Section 1983 action against the Philadelphia Prison System, the Philadelphia Health System and individuals associated with those institutions, including Dr. Skliros,[1] Linda Maher, Major Osie M. Butler, C/O Castro, and Lt. Lake ("Defendants"), alleging that Defendants violated his constitutional rights by failing to provide adequate medical treatment for his broken arm while he was incarcerated. Specifically, Plaintiff avers that on March 8, 2006, he broke his left arm after falling from the top bunk of his bed in the Philadelphia county prison. According to Plaintiff, although he was immediately seen by the medical staff within the prison, he was not taken to the hospital for treatment

---

[1] Dr. Skliros "no longer resides in the United States, has not been served, and has asserted failure to serve as a defense." (Defs.' Opp. at 2, doc. no. 39.)

until March 17, 2006.  (Compl., doc. no. 3.)

On September 16, 2008, this case was placed in civil suspense to accommodate Plaintiff as he made the transition from imprisonment to parole (doc. no. 21).  On December 16, 2008, after a status and scheduling conference with the parties, this case was returned to the active docket.  At that time, Defendants were instructed to take Plaintiff's deposition and to file their motion for summary judgment by February 13, 2009.

On February 13, 2009, Defendants filed a motion to dismiss for lack of prosecution, arguing that they had been unable to take Plaintiff's deposition, or otherwise proceed with the case, because Plaintiff had absconded from a halfway house and was a fugitive from justice (doc. no. 24).  On March 24, 2009, Plaintiff filed a motion seeking leave to reschedule his deposition to a later date (doc. no. 26).  The Court granted Plaintiff's motion, and directed Defendants to reschedule Plaintiff's deposition (doc. no. 29).  Defendants' motion to dismiss for lack of prosecution was denied as moot (doc. no. 30).

On May 19, 2009, the Court granted Defendants' motion to take Plaintiff's deposition, and directed the Warden at the State Correctional Institution at Forest to produce Plaintiff for a deposition (doc. no. 35).  Plaintiff has filed several motions since then, which are currently before the Court.

## II. PLAINTIFF'S MOTION TO RELEASE ALL MEDICAL RECORDS FROM THE PHILADELPHIA PRISON SYSTEM (DOC. NO. 33)

Plaintiff's motion to release all medical records from the Philadelphia Prison System appears to be a mislabeled discovery request.  In it, Plaintiff seeks the release of medical records from November 3, 2005 through May 11, 2006, as well as the names of the staff who treated him.  Plaintiff's motion also seeks medical records from Albert Einstein Hospital.[2]

Plaintiff's motion is unopposed and will be granted.[3]

## III. PLAINTIFF'S MOTION FOR THE APPOINTMENT OF COUNSEL (DOC. NO. 36)

Civil litigants do not have a constitutional or statutory right to counsel, but a district court may appoint counsel where certain factors are met.  See 28 U.S.C. 1915(e)(1) (providing that "[t]he court may request an attorney to represent any person unable to afford counsel").  "As a preliminary matter, the plaintiff's claim must have some merit in fact and law."

---

[2] Presumably, Plaintiff is requesting his own medical records, although he does not specify this in his motion.

[3] During a conference call with the parties on Tuesday, August 25, 2009, Defendants agreed to provide the requested records to Plaintiff, but informed the Court that certain of Plaintiff's medical records appear to be missing from the records that were subpoenaed from Albert Einstein Hospital.  Plaintiff's motion will be granted as to the records that are available and, as discussed on the record with the parties, the Court will assist Defendants in obtaining the additional records from Albert Einstein Hospital, to the extent that Defendants are able to identify those records.

Parham v. Johnson, 126 F.3d 454, 457 (3d Cir. 1997).  If Plaintiff meets this threshold requirement, the district court should consider the following non-exclusive factors: "(1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such an investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; (6) whether the plaintiff can attain and afford counsel on his own behalf." Id. at 457-58.  The Third Circuit has noted that "courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases." Id. at 458.

Plaintiff argues that the appointment of counsel is necessary in this case because he is indigent, illiterate and incarcerated.  Additionally, Plaintiff argues that his case involves complex medical issues, which may require expert testimony, and which he is unable to "take on without qualified counsel."  (Pl.'s Mot. for Counsel, doc. no. 36.)

Defendants oppose Plaintiff's request for the appointment of counsel.  First, Defendants argue that Plaintiff's claim lacks merit.  "To demonstrate a prima facie case of cruel and unusual punishment based on the denial of medical care, a

plaintiff must establish that defendants acted 'with deliberate indifference to his or her serious medical needs.'"  Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002).  "This standard has two elements: First, plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious,' or that the result of defendant's denial was sufficiently serious."  Id.  Second, "the plaintiff must make a 'subjective' showing that defendant acted with 'a sufficiently culpable state of mind.'"  Id.

Here, Defendants argue that Plaintiff has not met his burden because he failed to allege that Defendants' policy or practice violated his constitutional rights, and because Plaintiff was immediately referred to an outside medical provider for treatment.  At this point, given the general allegations in the Complaint and the undeveloped factual record, the Court cannot determine whether Plaintiff's claim has "merit in fact and law."  Parham, 126 F.3d at 457.

Second, Defendants argue that the vast majority of Parham factors weigh against the appointment of counsel.  While Defendants agree that Plaintiff is indigent and incarcerated (like many pro se litigants), they argue that his claim to be illiterate is not credible, given the numerous handwritten filings submitted by Plaintiff in this case and his able participation in conferences with the Court in September and

December 2008. Additionally, Defendants note that Plaintiff's case is not overly complex and that it will not require extensive discovery. See Parham, 126 F.3d at 459 (noting that the legal issue of deliberate indifference by a medical professional was "relatively simple"). Rather, Plaintiff's case hinges on his medical records, most of which are available through the prison system, not expert testimony or complex legal argument. (Defs.' Opp., doc. no. 39.)

Based on the scant record before it, the Court is unable to determine whether Plaintiff's claim has some "merit in fact and law," and whether the Parham factors weigh in favor of the appointment of counsel. Thus, Plaintiff's motion for the appointment of counsel will be denied without prejudice.

### IV. PLAINTIFF'S MOTION FOR LEAVE TO AMEND HIS COMPLAINT (DOC. NO. 37)

Plaintiff seeks leave to amend his complaint to add three (3) correctional officers who were allegedly involved in "cruel and unusual punishment on a medical unit." (Pl.'s Mot. to Amend, doc. no. 37.) These correctional officers are "C/O Fallen, C/O Byard[4] & C/O Rivera." (Id.) Additionally, Plaintiff

---

[4] In his motion to amend, Plaintiff seeks leave to add "C/O Byard," relying upon certain documents attached to his original complaint that refer to "C/O Bryant." Presumably, C/O Byard and C/O Bryant are the same person. Consistent with Plaintiff's motion for leave to amend his complaint, references herein will be to "C/O Byard."

seeks leave to amend his complaint to add "any name that [he] may not be able to read on any medical documentation, and anybody responsible at Albert Einstein for not setting a timely date for [his] operation." (Id.)[5]

Before considering the merits of Plaintiff's motion, the Court notes that Plaintiff's first motion for leave to amend his complaint was filed on June 5, 2008 (doc. no. 17).[6] In this motion, Plaintiff sought leave to add C/O Fallen, C/O Byard and C/O Rivera. Plaintiff's motion was denied without prejudice on September 16, 2008, the same date that this matter was placed in civil suspense to accommodate Plaintiff's transition to parole. For the purposes of the statute of limitations and "relation

---

[5]    Defendants have not addressed Plaintiff's request to add "any name that [he] may not be able to read on any medical documentation, and anybody responsible at Albert Einstein for not setting a timely date for [his] operation." (Pl.'s Mot. to Amend, doc. no. 37.)

To the extent that Plaintiff's motion seeks leave to amend his complaint to add new "John Doe" defendants, Plaintiff's motion will be denied, as Plaintiff's proposed amendments are barred by the applicable statute of limitations, see infra, and do not "relate back" to his original complaint. Specifically, in his original complaint, Plaintiff avers a violation of his constitutional rights by prison officials for deliberate indifference to his medical condition. There is no allegation that Albert Einstein personnel were involved in this same "conduct, transaction or occurrence." See Fed. R. Civ. P. 15(b)(1). Moreover, Plaintiff's proposed amendments are too vague to satisfy the notice requirements of Fed. R. Civ. P. 15(c)(1), see infra.

[6]    As discussed infra, this first motion for leave to amend was filed approximately three months after the two year statute of limitations had expired.

back" analyses discussed <u>infra</u>, the Court will view the circumstances in the light most favorable to Plaintiff, and consider June 5, 2008 as the filing date for the instant motion for leave to amend.

Defendants argue that Plaintiff's proposed amendments are futile because his claims against C/O Fallen, C/O Byard and C/O Rivera are barred by the applicable two-year statute of limitations. See <u>Urrutia v. Harrisburg County Police Dept.</u>, 91 F.3d 451, 457 n.9 (3d Cir. 1996) (noting that "federal civil rights laws do not contain a specific statute of limitations for § 1983 actions" and that "federal courts must look to the statute of limitations governing analogous state causes of actions"); <u>id.</u> (equating a Section 1983 action with a "tort action for damages for personal injuries" and applying Pennsylvania's two year statute of limitations).

Under Pennsylvania law, the two year statute of limitations period begins to run "when the cause of action accrues." <u>S.T. Hudson Eng'rs. Inc. v. Camden Hotel Dev. Assocs.</u>, 747 A.2d 931, 934 (Pa. Super. Ct. 2000). However, "the question of when a Section 1983 action accrues is determined by federal law." <u>Carter v. Pa. Dept. of Corrections</u>, No. 08-0279, 2008 WL 5250433, at *8 (E.D. Pa. Dec. 17, 2008). Under federal law, a cause of action accrues "when the plaintiff knew or should have known of the injury upon which its action is based." <u>Sameric</u>

Corp. of Delaware, Inc. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998).

Here, the two year statute of limitations for Plaintiff's Section 1983 claim began to run on March 17, 2006, the date on which Plaintiff allegedly received medical treatment for his broken arm.  Thus, Plaintiff's original complaint, which was filed on March 14, 2008, was timely.  But, Plaintiff's amended claims against C/O Fallen, C/O Byard and C/O Rivera, which were first brought on June 5, 2008, are time barred unless they "relate back" to his original complaint.[7]

"Rule 15(c) can ameliorate the running of the statute of limitations on a claim by making the amended claim relate back to the original, timely filed complaint."  Singletary v. Pa. Dept. of Corrections, 266 F.3d 186, 193 (3d Cir. 2001).

Fed. R. Civ. P. 15(c) provides:

> (c)(1) Relation Back of Amendments.  An amendment to a pleading relates back to the date of the original pleading when:
>    (A)   the law that provides the applicable statute of limitations allows relation back;[8]
>    (B)   the amendment asserts a claim or defense

---

[7] Plaintiff's first motion for leave to amend his complaint was filed on June 5, 2008 (doc. no. 17), approximately three months after the two year statute of limitations had expired.

[8] The Third Circuit has observed that "Pennsylvania courts do not take a more lenient approach to the relation back doctrine than do federal courts." Urrutia, 91 F.3d at 457. Thus, this subpart will not help Plaintiff.

                that arose out of the conduct,
                transaction, or occurrence set out--or
                attempted to be set out--in the original
                pleading; or
       (C)  the amendment changes the party or the
            naming of the party against whom a claim
            is asserted, if Rule 15(c)(1)(B) is
            satisfied and if, within the period
            provided by Rule 4(m) for serving the
            summons and complaint, the party to be
            brought in by amendment:
            (I)   received such notice of the action
                  that it will not be prejudiced in
                  defending on the merits; and
            (ii)  knew or should have known that the
                  action would have been brought
                  against it, but for a mistake
                  concerning the proper party's
                  identity.

As an initial matter, it is not at all clear that Plaintiff's claims against C/O Fallen, C/O Byard and C/O Rivera "arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading," i.e., the allegedly inadequate medical care he received for his broken arm. This condition is required for either an amendment under Fed. R. Civ. P. 15(c)(1)(B), or an amendment under Fed. R. Civ. P. 15(c)(1)(C).[9]

---

[9] Rule 15(c)(1)(C) may permit Plaintiff to substitute C/O Fallen, C/O Byard and C/O Rivera for the unidentified defendants he described in the caption of his original complaint. (See Compl., doc. no. 3 ("and othes [sic] situated in their Official and Individual Capacity et.al").) For Plaintiff's claim against these specific correctional officers to relate back to the original complaint, "all three conditions in Rule 15(c)(3) must be satisfied." Urrutia, 91 F.3d at 457.

Since Urrutia was decided, the 2007 Amendments to Fed.

C/O Fallen and C/O Rivera are both mentioned in an "Inmate Misconduct" report that is attached to the original complaint.[10] The "Inmate Misconduct" report details an incident in which Plaintiff assaulted a correctional officer and was then subdued with pepper spray. There is no suggestion that these officers were involved in the denial of medical care to Plaintiff. Thus, to the extent that Plaintiff seeks to add C/O Fallen and C/O Rivera as either new defendants under Fed. R. Civ. P. 15(c)(1)(B), or as substituted defendants under Fed. R. Civ. P. 15(c)(1)(C), Plaintiff has not met the necessary preconditions for amendment.

Additionally, the mere mention of C/O Fallen and C/O Rivera in a document attached to Plaintiff's complaint is insufficient to establish the notice required by Fed. R. Civ. P. 15(c)(1)(C). See Lape v. Pennsylvania, 157 Fed. Appx. 491, 497 (3d Cir. Nov. 22, 2005) (finding that plaintiff's proposed amendment failed where there was "nothing in the record" to

---

R. Civ. P. 15 involved changes to the numbering of its subparts. References to former "Rule 15(c)(3)" can be understood as a reference to the current "Rule 15(c)(1)."

[10] Defendants argue that Plaintiff's proposed amendments cannot "relate back" to his original complaint because C/O Fallen, C/O Byard and C/O Rivera are not mentioned in the body of Plaintiff's complaint, or in any of the documents attached thereto. This appears to be an oversight on the part of Defendants. While C/O Fallen, C/O Byard and C/O Rivera are not mentioned in the body of Plaintiff's complaint, each is referenced at least once in the documents attached thereto.

establish that a proposed defendant was involved in the conduct that formed the basis for plaintiff's Section 1983 claim).

With respect to C/O Byard, to the extent Plaintiff's claim against him is based on the conduct described in the "Inmate Misconduct" report, it would fail for the same reasons stated above.  C/O Byard is also mentioned, however, in two "Inmate Grievance" forms that are attached to Plaintiff's original complaint.  One of these forms seem to describe the same incident that was the subject of the "Inmate Misconduct" report.  Again, because Plaintiff has not alleged that this incident was related to the allegedly inadequate medical care he received for his broken arm, an amendment based on these allegations would not meet the requirements of  Fed. R. Civ. P. 15(c)(1)(B), or (c)(1)(C).

The second "Inmate Grievance" form though states that Plaintiff "was not allowed to get [his] meds" and that "C/O Bryant grabbed me by my left arm and [illegible] on the ground." Arguably, this is related to the "conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading," i.e., the allegedly inadequate medical care he received for his broken arm.

Still, Plaintiff's proposed amendment regarding C/O Byard does not "relate back" to his original complaint.  Clearly, Plaintiff was aware of the identity of C/O Byard when he filed

his original complaint, but chose not to sue him at the time. See Garvin v. City of Phila., 354 F.3d 215, 221-222 (3d Cir. 2003) ("[A]n amended complaint will not relate back if the plaintiff had been aware of the identity of the newly named parties when she filed her original complaint and simply chose not to sue them at that time.")

Thus, Plaintiff's motion for leave to amend his complaint will be denied.

V. CONCLUSION

For all of these reasons, Plaintiff's motion for the release all medical records from the Philadelphia Prison System will be granted. Plaintiff's motion for the appointment of counsel will be denied without prejudice. Plaintiff's motion for leave to amend his complaint will be denied. An appropriate order shall issue.